J-S37011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER FLORES | : | |
| | : | |
| Appellant | : | No. 313 EDA 2024 |

Appeal from the PCRA Order Entered January 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003501-2015

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 26, 2024**

Alexander Flores appeals from the order that dismissed without a hearing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm in part, vacate in part, and remand for further proceedings.

Appellant is serving a sentence of life imprisonment imposed following his convictions for murder and other crimes. The PCRA court offered the following summary of the underlying facts:

> [On] the evening of December 15, 2011, a group of men, including [Appellant], were hanging out in a school parking lot on the corner of East Somerset Street and Coral Street in Philadelphia. [Appellant] was the boss of a drug organization to which the other men were connected. The conversation turned to who owed money to [Appellant]. The exchange ended with [Appellant] handing Randy Diaz a gun and ordering Diaz to kill Juan Modesto Cruz. Diaz in return, directed [teenager] Christopher Martinez to drive him around the block and when Diaz exited the vehicle for Martinez to wait for him, leaving the car in gear for a quick getaway. Having spotted Cruz in the 2000 block of East Auburn Street, Diaz exited the vehicle, shot Cruz five times, killing him,

and then jumped back in the car, fleeing the area with Martinez. Officer[s] Timothy Murphy and [William] Toughill responded to a radio call concerning gunshots, finding Juan Cruz lying on the ground, suffering from multiple gunshots. Another responding patrol car scooped up Mr. Cruz and rushed him to the hospital. Twenty-eight days later, Cruz died of the gunshot wounds inflicted on December 1[5], 2011.

Christopher Martinez testified [at Appellant's subsequent trial] that he had pled guilty to third degree murder in this case and what occurred on the night of December 1[5], 2011, implicating [Appellant] in the murder . . . . Agnes Rios testified that she was the mother of Christopher Martinez and after he was arrested, she was sleeping in her own house when two men entered her bedroom, woke her up and told her she had to go outside, where she was confronted by [Appellant,] who wanted a copy of the statement her son had given to the police.

PCRA Court Opinion, 2/20/24, at 3 (citations omitted, paragraph break added).

A jury convicted Appellant of first-degree murder, criminal conspiracy, and firearms violations. This Court affirmed his judgment of sentence, and our Supreme Court denied his petition for allowance of appeal on April 28, 2021. *See Commonwealth v. Flores*, 242 A.3d 437 (Pa.Super. 2020) (non-precedential decision), *appeal denied*, 252 A.3d 1091 (Pa. 2021). Thus, his judgment of sentence became final on July 27, 2021, when the period for him to file a petition for a writ of *certiorari* in the U.S. Supreme Court expired. *See* 42 Pa.C.S. § 9545(b)(3); U.S. Sup.Ct. R. 13(1) (providing that the time for filing a petition for a writ of *certiorari* is within ninety days of the judgment).

Appellant timely filed a counseled PCRA petition on July 25, 2022. Therein, he raised a claim of after-discovered evidence, alleged trial counsel ineffectiveness concerning the failure to call Randy Diaz as a witness and advising Appellant not to testify, and asserted a right to relief based upon the cumulative impact of all the claims. Appellant supplemented the petition with additional factual allegations following a review of the case file maintained by the district attorney's office. Thereafter, the Commonwealth moved to dismiss the petition, contending that the claims were belied by the record and without merit. Appellant responded to the motion, contesting the Commonwealth's argument as to the after-discovered-evidence claim.

On December 13, 2023, the PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant filed a premature *pro se* notice of appeal on January 11, 2024. The PCRA court entered its dismissal order on January 17, 2024, and this Court deemed the instant appeal to flow therefrom pursuant to Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). ***See also Commonwealth v. Williams***, 151 A.3d 621, 624 (Pa.Super. 2016) (explaining that a *pro se* notice of appeal by a represented defendant is an exception to the rule against hybrid representation).

Appellant presents the following questions for our consideration, which we have re-ordered for ease of disposition:

I. Did the PCRA court err in finding, without a hearing, that Appellant's constitutional rights under the Fifth, Sixth and Fourteenth Amendments were not violated by the prosecutor's failure to disclose that Christopher Martinez received a benefit in exchange for his cooperation in this case . . . ?

II. Did the PCRA court err in finding, without benefit of a hearing, that Appellant's rights under Article 1 § 9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of counsel were not violated by trial counsel's failure to call Randy Diaz?

III. Did the PCRA court err in finding, without benefit of a hearing, that Appellant's rights under Article 1 § 9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth Amendment to the Constitution of the United States of America to effective assistance of counsel were not violated when trial counsel advised Appellant not to testify on his own behalf?

IV. Did the PCRA court err in finding, without a hearing on any of the above claims, that Appellant's constitutional right to due process of law and a fair trial were not violated by the cumulative impact of trial counsels' ineffectiveness and the after discovered evidence in violation of the Sixth Amendment?

Appellant's brief at 7 (unnecessary capitalization omitted).

We begin with the governing legal principles. "[W]e review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." **Commonwealth v. Howard**, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned

up). Concerning the PCRA court's dismissal of Appellant's claims without conducting an evidentiary hearing, we observe that "there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. McCready***, 295 A.3d 292, 298 (Pa.Super. 2023) (cleaned up). Overall, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due."[1] ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

We first address Appellant's argument that the PCRA court improperly denied his claim premised upon after-discovered evidence. To succeed on such a claim, an appellant must establish that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008).

Appellant claims that he is entitled to a new trial because Martinez, the juvenile getaway driver who testified against Appellant at trial, was subsequently sentenced to time-served pursuant to a deal with the

---

[1] Relief is not due if it is apparent from the certified record that the PCRA court's ruling should be affirmed on a basis other than its proffered one. ***See***, *e.g.*, ***Commonwealth v. Dozier***, 208 A.3d 1101, 1103 (Pa.Super. 2019).

Commonwealth that was not fully disclosed.[2]  In support, Appellant highlights the Commonwealth's internal emails from 2012 referencing Martinez as "the juvenile cooperator," indicating that Martinez's family was "on board with dealing favorably with the juvenile" to secure his testimony against his co-conspirators, and stating that the prosecution was agreeable to Martinez entering an open guilty plea to third-degree murder "but it would be nice if we could actually use him as a witness against one of these other two guys." *Id*. at 33-35.

Appellant observes that Martinez testified against Appellant at the preliminary hearing in 2015 and was released onto house arrest the following year in what Appellant characterizes as "a possible reward for having done so[.]" *Id*. at 36.  In 2017, Martinez entered open guilty pleas to third-degree murder and conspiracy.  He then testified against Appellant at his 2019 trial, indicating that he had not been promised anything in exchange for his testimony but that he hoped for a lenient sentence.  Then, as mentioned, Martinez promptly received a sentence of time served after he helped secure Appellant's conviction.  Further, Appellant notes, "[t]he Commonwealth paid a significant amount of money to . . . relocate Martinez . . . after Appellant

_____

[2] Although Appellant invoked *Brady v. Maryland*, 373 U.S. 83 (1963) (providing that the prosecution must disclose information favorable to the accused), in his PCRA petition, he does not mention or develop a *Brady* analysis in his brief.  Accordingly, we address Appellant's claim solely under the after-discovered-evidence rubric.

was convicted due to threats that were allegedly made to his safety." *Id*. at 37 n.2.

Appellant, opining that "[t]here would have been no possible reason to delay Martinez['s] sentence seven full years if there was not an understanding that the sentence would be in some way contingent upon [his] testimony in the Appellant's trial," therefore "believes and avers that it is more likely than not that Martinez['s] cooperation in this case formed the basis for the [c]ourt's sentencing Martinez to time served." *Id*. at 38-39. He thus maintains that a hearing is necessary for the various Commonwealth actors to be questioned as to what Martinez was promised in exchange for his testimony. *Id*. at 40.

The PCRA court rejected Appellant's claim on the basis that "the sentence Martinez finally received cannot be considered after-discovered evidence" given what evidence did come out at Appellant's trial. *See* PCRA Court Opinion, 2/20/24, at 11. The Commonwealth agrees with the assessment that the new evidence is merely cumulative, and further argues that Appellant has identified no evidence that there was "a sentencing deal with the Commonwealth beyond what was previously available to the defense and explored during trial." Commonwealth's brief at 16. Additionally, the Commonwealth contends that Appellant's intended use of the evidence that Martinez was sentenced to time served would solely be to impeach Martinez. *Id*.

Following review of the certified record, we discern no basis to disturb the PCRA court's ruling. Appellant was fully aware as trial began that Martinez had not been sentenced yet and hoped that he would be rewarded for his testimony. In his opening statement, Appellant's counsel posited that the Commonwealth's case hinged upon the testimony of Martinez, "who was caught literally, pretty much red-handed, doing this, seen driving off in Randy Diaz's BMW." N.T. Trial, 1/29/19, at 24. Counsel indicated that "Martinez basically opted for the old strategy of 'best defense is a good offense' and decided that the more people he [implicated], the better he would do. And the story continued to build as he went along." *Id*. Counsel continued that "Martinez basically got a Get Out Of Jail Free card . . . in return for sticking to the script" and stated that the jury would "hear again and again the favors he received, the favorable treatment he got while on house arrest [and] the whole course of this case," and said "[t]hat's what they are going to ask you to convict [Appellant] based on." *Id*. at 25.

When the Commonwealth called Martinez to testify, it established at the outset that he had pled guilty to conspiracy and third-degree murder and was awaiting sentencing. *Id*. at 44. Martinez stated that he had spent approximately five years in jail on the charges and was exposed to a potential of forty to eighty years of imprisonment when he was sentenced. *Id*. at 45-46. Martinez indicated that no one had promised or guaranteed what his sentence would be or anything else in return for his testimony. *Id*. On cross-

examination, Martinez acknowledged that the "terms of his plea agreement" were that he would "testify and the[ Commonwealth would] decide whether or not [he had] been truthful and whether or not [he would] get the lenient treatment." *Id*. at 87. Martinez offered that "there ain't no guarantee" that he would receive a lenient sentence, but, despite facing up to eighty years, he hoped that he would "never do another day in jail." *Id*. at 87, 89.

From this, it is plain that Appellant is not entitled to relief. First and foremost, he offers no evidence that Martinez's sentence was imposed pursuant to an undisclosed deal as opposed to the understanding that was discussed at Appellant's trial. Instead, he offers mere speculation and seeks to have a hearing, hoping that a fishing expedition will produce actual evidence.

Second, Appellant proposed to use the evidence "to show that Martinez had a motive to lie and inculpate the Appellant." Appellant's brief at 41. Despite his protestations to the contrary, offering reasons to challenge the truthfulness of a witness constitutes the very definition of impeachment. *See* IMPEACH, Black's Law Dictionary (12th ed. 2024) (defining the term, in pertinent part, as "To discredit the veracity of (a witness) <to impeach a witness on cross-examination>"). Hence, it cannot support relief pursuant to a claim of after-discovered evidence. *See Pagan*, 950 A.2d at 292.

Finally, proof that Martinez was sentenced to time served after Appellant's conviction is cumulative and corroborative of what the jury heard:

Martinez had a motivation to testify against Appellant to the Commonwealth's satisfaction because the cooperation might lessen his sentence from forty-to-eighty to zero years. **See** N.T. Trial, 1/29/19, at 44-46, 87-89. Therefore, the PCRA court did not err in dismissing Appellant's claim of after-discovered evidence without a hearing.

In his next two issues, Appellant challenges the PCRA court's denial of his contentions that trial counsel's performance was constitutionally deficient. To prevail on these claims, Appellant must establish:

> (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

**Commonwealth v. Grayson**, 212 A.3d 1047, 1054 (Pa.Super. 2019) (cleaned up). An appellate court is "not required to analyze the elements of an ineffectiveness claim in any order; if a claim fails under any element of the . . . test, we may proceed to that element first." **Commonwealth v. Rivera**, 199 A.3d 365, 374 (Pa. 2018).

Initially, Appellant maintains that trial counsel was ineffective for failing to call Diaz, the shooter, to testify that Appellant was not guilty of the murder. He points to a letter that Diaz sent to Appellant and that Appellant forwarded to trial counsel and the prosecution in 2015, after Diaz was convicted but before Appellant was tried. Therein, Diaz lamented that Appellant was implicated in the murder and advised him to tell his lawyer to call Diaz as a

- 10 -

witness to testify that Appellant did not hand Diaz a gun or order him to kill Cruz. *See* Appellant's brief at 17-18. Appellant argues that counsel's decision not to call Diaz could not be strategic because counsel did not even interview or speak with Diaz. *Id*. at 18. He suggests that it is probable that "Diaz would testify truthfully and consistent with his letter in that he had already been found guilty and had nothing more to lose from a penal standpoint." *Id*. at 19.

The PCRA court explained its decision to dismiss Appellant's request for relief on this basis thusly:

> The law is clear[:] a claim that counsel was ineffective for failing to call a witness to testify lacks arguable merit when the trial court conducted a colloquy of the defendant at trial and that defendant agreed with his attorney's decision not to present a witness.
>
> [Appellant] was colloqu[iz]ed as to whether he had any witnesses he wished to present:
>
> THE COURT: One other thing. Are there any other witnesses that you wanted presented on your behalf?
>
> THE DEFENDANT: No[,] sir.
>
> MR. BERARDINELLI: One thing we should just add to that response. We had brought down a witness-from custody, Mr. Diaz, the shooter in the case--who is currently doing life. I had an investigator go up and interview him. [Appellant] and I have sat down and reviewed the contents of that statement.
>
> Based on what we see in terms of how it would fit or not fit, actually, with our defense in this case, we've made the strategic decision not to use him in this case. But he is available and I've discussed that extensively with [him].

THE COURT: You agree with that as well?

THE DEFENDANT: Yes, sir.

THE COURT: All right. We'll see you all tomorrow.

Appellant cannot now come forward and contradict his own sworn statements to the trial court. [He] is bound by his statements, under oath, to the trial court. The colloquy is clear that Appellant was advised of his right to present the witness Diaz, but he knowingly, voluntarily and intelligently declined to do so and as such he is not entitled to any relief.

PCRA Court Opinion, 2/20/24, at 6-7 (cleaned up).

We discern no error or abuse of discretion on the part of the PCRA court. "A defendant who voluntarily waives the right to call witnesses during a colloquy cannot later claim ineffective assistance and purport that he was coerced by counsel." *Commonwealth v. Lawson*, 762 A.2d 753, 756 (Pa.Super. 2000). As our Supreme observed: "To hold otherwise would allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002).

To the extent that Appellant maintains that his waiver was not knowing and intelligent because counsel did not personally interview Diaz, *see* Appellant's brief at 22, the colloquy quoted above plainly reveals that Appellant was aware that it was an agent of his counsel who conducted the interview. Appellant does not suggest that a personal discussion by counsel with Diaz would have led to the gathering of materially different information

- 12 -

that would have changed his mind about agreeing to forgo calling him at trial. Instead, Appellant is seeking to assert the precise type of claim that our High Court eschewed in **Paddy**. As such, the PCRA court properly rejected it.[3]

Appellant's remaining ineffectiveness claim concerns counsel's advice that Appellant not testify in his own defense. Stated succinctly by our federal brethren concerning the protections of the United States Constitution: "[T]he right to counsel guarantees a defendant the right to receive advice concerning his decision to testify, while the right to testify guarantees a defendant the personal right to choose whether to testify." **United States v. Anderson**, 1 F.4th 1244, 1254 (11th Cir. 2021). As this Court has explained in more detail:

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Commonwealth v. Washington**, 269 A.3d 1255, 1264 (Pa.Super. 2022) (*en banc*) (cleaned up).

---

[3] Since we reject this claim for lack of arguable merit, Appellant's fourth appellate issue alleging cumulative prejudice is unavailing. ***See Commonwealth v. Koehler***, 36 A.3d 121, 161 (Pa. 2012) ("[T]o the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." (cleaned up)).

The prejudice analysis in addressing a claim that counsel was ineffective in his consultation calls for "whether the result of the waiver proceeding would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand." *Id*. at 1264 (cleaned up). Counsel's duty to consult with the defendant to enable him to make a knowing decision about exercising his right to testify encompasses providing accurate information about the ramifications of the decision, *i.e.*, "the pitfalls associated with exercising that right," such as the possibility of impeachment. *See Commonwealth v. Daniels*, 999 A.2d 590, 596 (Pa.Super. 2010).

Here, Appellant participated in the following colloquy concerning his decision to waive his right to testify:

THE COURT: . . . How old are you?

[APPELLANT]: Thirty-two.

THE COURT: How far did you go in school?

[APPELLANT]: Eleventh.

THE COURT: Read, write and understand the English language?

[APPELLANT]: Yes.

THE COURT: Are you under the influence of any drugs or alcohol?

[APPELLANT]: No, sir.

THE COURT: Have you ever been diagnosed with a mental disability?

[APPELLANT]: No, sir.

THE COURT: The Commonwealth has rested, which means [it is] no longer going to present any more evidence at this particular time.

Now, it's time for your defense to proceed. One of the issues of the defense proceeding is whether or not you wish to take the stand in your own defense. You have a [c]onstitutional right to take the stand in your own defense. You have as [c]onstitutional right not to take the stand, at which time I tell the jury that they cannot hold any adverse inference as a result of that.

Now, have you had enough time to speak with your attorney about that?

[APPELLANT]: Yes.

THE COURT: Are you satisfied with his representation up until now?

[APPELLANT]: Yes.

THE COURT: It's not his decision, though. You should listen to what he has to say because he's an excellent, excellent attorney that's been around for many, many years. I know him to be a great attorney. However, the decision is not his. The decision is yours, and yours alone, as to whether or not you wish to take the stand.

So did you talk to him about whether or not you should testify in this matter?

[APPELLANT]: Yes, sir.

THE COURT: And have you come to a conclusion as to whether or not?

[APPELLANT]: Yes, sir.

THE COURT: And what is that conclusion?

[APPELLANT]: I would not like to take the stand.

THE COURT: You don't want to?

[APPELLANT]: No.

THE COURT: All right.

N.T. Trial, 1/30/19, at 172-74.

Appellant argues that his waiver of the right to testify was not knowing and voluntary, despite the colloquy, because counsel's advice that he should not testify was not reasonably supported. *See* Appellant's brief at 27. He asserted in his verified statement filed in the PCRA court that counsel "never really discussed the pros and cons of testifying," but rather "just said 'I got this.'" *See* Motion to Supplement, 1/29/23, at unnumbered Exhibit.

Appellant, having since learned of trial counsel's consultation obligations, maintains that there were no considerations, such as prior inconsistent statements or *crimen falsi* convictions, with which he was subject to impeachment. *See* Appellant's brief at 27. He posits that, given the lack of forensic evidence implicating him in the crime and the decision not to call Diaz, Appellant's own testimony was the only means to inform the jury of his version of events, which he summarized as follows:

> I was chillin driving around with some of my boys just getting high and selling dope. It got slow so we ended up on the block in the school yard. It was me, John, Sperm, Bug, Mark, Gordo, Eric, Jeremy, Randy, Amanda and few neighbors. So I was in my truck with Bug, Mark, and Jeremy. I had my door open and Amanda was at the window talking to us and Randy was at my door. Somebody asked me "Yo, [Appellant], what would you do if someone said they was going to shoot you?" So I said, "I shoot a nigga before they shoot me." I never give anyone the green light to kill anyone.

- 16 -

I then got a phone call and I left to West Philly to go and pick up my daughter['s] godfather. I got on the 95 that was when I got a phone call that white boy got shot. I knew white boy all my life. I looked up to white boy and his friends. I never had a fight with him. Not like Randy Diaz and his brother[-]in[-]law, Christopher Martinez.

**See** Motion to Supplement, 1/29/23, at unnumbered Exhibit. Appellant insists that, under these circumstances, trial counsel's advice that he not testify rendered his waiver involuntary.

The PCRA court held that Appellant is barred from pursuing this ineffectiveness claim because doing so would require him to "assert that he was lying under oath when he attested at the time of trial that he had ample time to discuss the issue with counsel and that he was making the decision not to testify." PCRA Court Opinion, 2/20/24, at 9. It further opined that Appellant offered no support for a finding that counsel interfered with his right to testify or offered unreasonable advice that negated the voluntariness of the waiver of that right. **Id**. at 9-10. The Commonwealth additionally argues for affirmance because counsel had a reasonable basis for recommending that Appellant not take the stand given his proposed testimony was "that he was 'getting high and selling dope' and that he volunteered that he would preemptively shoot someone." Commonwealth's brief at 11.

Upon review, we are constrained to agree with Appellant that the PCRA court erred in dismissing this claim without a hearing. In marked contrast to his claim concerning counsel's failure to call Diaz as a witness, here Appellant has alleged facts that, if deemed credible, could undermine the soundness of

counsel's advice and Appellant's decision to heed it. Further, those facts, *i.e.*, that counsel neglected to provide a legally-adequate consultation with Appellant to inform his decision on whether to testify, are not in conflict with his on-the-record representations that he had sufficient time to talk to counsel about the issue and did talk to him in a manner that was satisfactory at that point in time. Consequently, this is not a case in which Appellant's claim is barred by statements he gave under oath. ***Cf. Commonwealth v. Lawson***, 762 A.2d 753, 755 (Pa.Super. 2000) (holding defendant could not pursue claim that counsel interfered with his right to testify when he had said under oath that no one forced him to give up the right). Moreover, since the certified record does not reveal the foundations of counsel's advice, we cannot follow the Commonwealth's suggestion to reject the claim because counsel had a reasonable basis. ***See Commonwealth v. McGill***, 832 A.2d 1014, 1023 (Pa. 2003) ("[T]he court is not to glean, surmise, or speculate with regard to the strategy of counsel except in those rare instances where his strategy is clear and obvious from the record under review.").

Therefore, we hold that Appellant is entitled to a hearing on his claim that trial counsel was ineffective in advising him not to exercise his right to testify.[4] Accordingly, we vacate the PCRA court's order insofar as it denied

_____

[4] We note that the appellate decisions on this issue relied upon by the PCRA court and parties typically entailed claims that were disposed of following a hearing. ***See***, ***e.g.***, ***Commonwealth v. Nieves***, 746 A.2d 1102, 1106 (Pa.
*(Footnote Continued Next Page)*

that claim without a hearing. For the reasons stated herein, we affirm the order in all other respects.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024

---

2000) (vacating and remanding for a new trial where counsel erroneously advised the defendant that he could be impeached by his criminal record and the testimony showed that he had no "alternative reasonable strategy for advising Appellant not to testify"); **Commonwealth v. Hall**, 701 A.2d 190, 202 (Pa. 1997) (concluding that the defendant was properly advised by counsel based upon the court's factual findings and credibility determinations); **Commonwealth v. Sandusky**, A.3d 1033, 1076 (Pa.Super. 2019) (affirming PCRA court's conclusion that the defendant's waiver of the right to testify was not rendered involuntary by counsel's advice where the hearing evidence supported its findings that the defendant's decision "was made after a full consultation with counsel, and was based on counsel's advice regarding the benefits and risks of testifying").